IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

ANTHONY TATUM,

    Plaintiff,

v.

X CORP., *et al.*,

    Defendants.

Case No.: 7:24-CV-00081-D-RJ

**DEFENDANT X CORP.'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS THE AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM**

I.   **INTRODUCTION**

Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 11; "Opposition" or "Opp'n") confirms his Amended Complaint (Dkt. 1-2; "FAC") should be dismissed with prejudice. The disclaimer and limitation of liability clause in X Corp.'s Terms of Service ("Terms")—which Plaintiff repeatedly agreed to—bar his claims, and the Opposition fails to show otherwise. Plaintiff does not dispute he is bound by the Terms and that his claims are premised on his use of Twitter.[1] His new assertion that he paid to join Twitter (which is baseless because Twitter users do not pay to *create* their Twitter accounts) fails to rescue his claims, because the disclaimer and limitation of liability clause are enforceable *regardless of* whether he paid. His other contention that the Terms' disclaimer and limitation of liability clause breach the implied covenant of good faith and fair dealing likewise also fails as a matter of law, because the implied covenant cannot contradict the Terms' express provisions. Plaintiff also does not, and cannot, identify any facts or law showing that he plausibly pleaded his claims against X Corp.

Plaintiff has already amended his complaint, and further amendment cannot save his futile claims. X Corp. requests this Court dismiss the FAC without leave to amend.

II.   **ARGUMENT**

   A.   **California Law Applies**

Plaintiff does not dispute, and thus effectively concedes, that he agreed to the Terms when he created and accessed his Twitter accounts, and that those Terms explicitly provide that California law "will govern . . . any dispute that arises" between Plaintiff and X Corp. arising from his use of Twitter. *See* Dkt. 6-1 ("Mot.") at 6-7; *see generally* Opp'n. Plaintiff also does not dispute

---

[1] Twitter, the online social media platform, has been re-branded as "X." This brief continues to refer to it as "Twitter" throughout for ease of understanding.

1

his claims arise out of his use of Twitter, nor does he contend the Terms' provision designating California law is unenforceable. *See* Opp'n at 3 ("Although Plaintiff does herein allege that certain clauses of the Twitter Terms of Service breach the good faith and fair dealing standard that governs contracts, the Choice of Law clause is not a breach of that standard."). Accordingly, Plaintiff effectively concedes the Terms' choice-of-law provision is valid and enforceable against him, and that California law applies to Plaintiff's claims against X Corp. *See* Mot. at 7-8.

### B. The Terms Bar Plaintiff's Claims

The Opposition confirms Plaintiff's claims against X Corp. are independently barred by the Terms' disclaimer and limitation of liability clause. As the Opening Brief demonstrated, Plaintiff is bound by the Terms, and his claims are premised on his use of Twitter. *See* Mot. at 8-9. Plaintiff's claims therefore fall squarely within, and are barred in their entirety by, the Terms' disclaimer and limitation of liability clause. *See* Dkt. 7 ("RJN"), Ex. A at 2-3 (disclaiming liability to X Corp. for "harm that results from [Plaintiff's] . . . use of [Twitter]," and providing that X Corp. "SHALL NOT BE LIABLE FOR ANY . . . DAMAGES . . . RESULTING FROM . . . [Plaintiff's] USE OF . . . THE SERVICES; [or] . . . ANY CONDUCT . . . OF ANY THIRD PARTY . . . , INCLUDING WITHOUT LIMITATION, ANY . . . ILLEGAL CONDUCT OF . . . THIRD PARTIES," under "ANY THEORY OF LIABILITY, WHETHER BASED ON WARRANTY, CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE"); *id.*, Ex. B at 2-3 (same); *id.*, Ex. C at 2-3 (same); *id.*, Ex. D at 2-3 (same). Plaintiff also has no answer to X Corp.'s argument that courts routinely enforce disclaimers and limitation of liability clauses, including for claims based on alleged hacking by third parties. *See* Mot. at 9-10. Lacking any response to this dispositive legal bar, Plaintiff's claims should be dismissed.

In response to X Corp.'s argument that courts have found limitation of liability clauses to

be "particularly important" when a platform offers its services for free, Plaintiff now asserts for the first time that "Twitter is a product that I paid for, not a free service provided by a service provider." Opp'n at 3. Plaintiff's new assertion is baseless, because Twitter users do not pay to create their Twitter accounts—which is when Plaintiff agreed to the Terms. His assertion also should be disregarded, because "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ." *Ehmann v. Duke Energy Carolinas, LLC*, No. 19-CV-00311, 2020 WL 958909, at *3 (W.D.N.C. Feb. 27, 2020) (internal quotation mark omitted). Even if considered, Plaintiff's new allegation would not rescue his claims, because limitation of liability clauses are plainly enforceable under California law, *regardless of* whether the services involved were offered for free. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1123, 147 Cal. Rptr. 3d 634 (2012) (limitation of liability clause in contract for paid services barred contract-based and negligence claims). Accordingly, Plaintiff's claims are barred by the Terms, regardless of Plaintiff's impermissible—and futile—attempt to amend claims in his Opposition.

Plaintiff also argues he does not seek to impose liability "for the hackers' actions but rather that [X Corp.] provided a faulty product and failed to adequately warn of the dangers associated with it." Opp'n at 3-4. That is a distinction without a difference. Plaintiff does not dispute his claims are based on his use of Twitter. Thus, his claims fall squarely within, and are thus barred by, the Terms' disclaimer and limitation of liability clause.

Finally, Plaintiff argues in conclusory fashion, and without any legal support, that the Terms' disclaimer and limitation of liability clause do not bar his claims because they somehow "breach the good faith and fair dealing standard that governs contracts." Opp'n at 4. This baseless argument fails as a matter of law because the "implied covenant of good faith and fair dealing

3

cannot contradict the express terms of a contract." *Storek & Storek, Inc. v. Citicorp Real Est., Inc.*, 100 Cal. App. 4th 44, 55, 122 Cal. Rptr. 2d 267 (2002).

Accordingly, the Terms bar Plaintiff's claims.

### C. Plaintiff Fails to State Any Plausible Claim

#### 1. *Plaintiff Fails to Plausibly Allege Strict Liability Failure to Warn Under California Law*

The Opposition confirms that Plaintiff fails to state a plausible claim for strict liability failure to warn under California law. Plaintiff does not dispute that the cybersecurity issues on Twitter alleged in the whistleblower complaint, on which he bases his failure to warn claims, are different from the risk he alleges in the FAC: that Twitter users purportedly can "hack" other users' computers and cause websites to crash, program libraries to change, private SSH keys to stop working, and memory to randomly change or reach capacity. *See* Mot. at 12; Opp'n at 4-5. Thus, Plaintiff effectively concedes that he cannot plausibly allege the risk underlying his claims was known or knowable. *See* Mot. at 11.

Plaintiff argues his claim is not based on a "duty to warn about 'risk of hacking'" on Twitter, but on a duty to warn "about the presence of extremely dangerous 'anonymous accounts, hackers, high profile accounts and terrorist accounts and groups," to "whom the faulty algorithm improperly displayed Plaintiff's Tweets . . . which then resulted in those dangerous people targeting Plaintiff and his family at their home and causing injury.'" Opp'n at 4. Again, this Court should disregard these new allegations that appear nowhere in the FAC. *See Ehmann*, 2020 WL 958909, at *3 (complaints may not be amended in opposition briefs). Even if considered, these new allegations fail to rescue his claim, which is internally contradicted by his allegations in the FAC that he "communicat[ed] and interact[ed]" with the hackers on Twitter, including via "direct messages." FAC ¶ 38; *see also* Opp'n at 4 (clarifying that the alleged hackers are the Doe

4

defendants); *Cadmus v. Williamson*, No. 15-CV-045, 2016 WL 1047087, at *11 (W.D. Va. Mar. 10, 2016) ("This new allegation is troubling . . . because it conflicts with facts in the original complaint . . . .").

If anything, Plaintiff's attempt to recast his claim as about a purported failure to warn about "the presence" of hackers *confirms* that his claim should be dismissed. "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203, 649 P.2d 894 (1982). A duty to warn of third-party conduct exists only when the defendant has a "special relationship" with (a) a "third person which imposes a duty upon the [defendant] to control the third person's conduct," or (b) the plaintiff "which gives the [plaintiff] a right to protection." *Id.* Plaintiff does not allege any facts that would show X Corp. had a special relationship with, or a duty to control, anonymous, unidentified third-party hackers. And X Corp. does not have a special relationship with Plaintiff that would give rise to a duty to warn about potential bad acts of third parties. *See Dyroff v. Ultimate Software Grp., Inc.*, No. 17-CV-05359, 2017 WL 5665670, at *1 (N.D. Cal. Nov. 26, 2017) (social networking website did not have special relationship with its users and did not owe duty to warn them about the criminal acts of other users), *aff'd*, 934 F.3d 1093 (9th Cir. 2019); *Doe No. 14 v. Internet Brands, Inc.*, No. 12-CV-3626, 2016 WL 11824793, at *4 (C.D. Cal. Nov. 14, 2016) (same conclusion, for professional networking website). In sum, even if Plaintiff's new allegations are considered, Plaintiff's claim still fails as a matter of settled law.

Plaintiff also contends he plausibly alleges proximate causation because X Corp.'s alleged "actions are not tenuously connected" to his alleged harms "by a long chain of events." Opp'n at 5. This conclusory argument is belied by the FAC, where Plaintiff alleges his harms are tied to (a) his resignation from his job, (b) a separate termination from another job, (c) his breaking of his

apartment lease, (d) his moving from and to North Carolina, (e) his "hacked" computer, and (f) new neighbors moving in—*i.e.*, a long, attenuated chain of events involving Plaintiff, his employers, third party "hackers," and Plaintiff's neighbors, but not X Corp. *See* FAC ¶¶ 35-51. Because Plaintiff's allegation of X Corp.'s conduct is tenuously connected to his supposed injuries, Plaintiff fails to plausibly allege proximate causation. *See* Mot. at 12-13.

Finally, Plaintiff concedes, as he must, that he cannot legally recover economic damages, including his alleged lost wages, moving expenses, and the costs of breaking his lease. *See* Opp'n at 5 ("Depending on this Court[']s choice of law [determination], the economic losses can be removed from the claim in an amended complaint."). He also does not dispute the FAC fails to allege he suffered any emotional distress. *See* Mot. at 13; *see generally* Opp'n. Thus, Plaintiff effectively concedes his claim, to the extent it is premised on these alleged damages, should be dismissed.

Accordingly, this Court should dismiss Plaintiff's claim for strict liability failure to warn under California law.

> 2. *Plaintiff Fails to Plausibly Allege Negligent Failure to Warn Under California Law*

The Opposition similarly confirms that the FAC fails to state a plausible claim for negligent failure to warn under California law.

Plaintiff contends that "[b]ased on the whistleblower report . . . , there was a legitimate issue and danger with Twitter."[2] Opp'n at 5. As noted, the whistleblower complaint alleges

---

[2] Plaintiff relies on *Taylor v. Elliott Turbomachinery Co.*, 171 Cal. App. 4th 564, 90 Cal. Rptr. 3d 414 (2009), to argue "manufacturers have a duty to warn consumers about the hazards inherent in their products." Opp'n at 5. *Taylor* is not applicable, because there the court held a manufacturer did not have a duty to warn about asbestos-containing materials supplied by third parties. *Taylor*, 171 Cal. App. 4th at 571.

6

unrelated cybersecurity issues at Twitter that do not remotely indicate the existence of the risk of user computer-hacking risk the FAC alleges. Thus, Plaintiff does not plausibly allege another prudent social media company would have foreseen such a risk, required to plausibly allege a negligent failure-to-warn claim. *See Internet Brands*, 2016 WL 11824793, at *5 ("Although it may have been foreseeable that [third party criminals] would strike again, [website operator defendant] only had knowledge of a threat to its member base at large, not to any specific member. . . . [I]mposing a duty [to warn of members' criminal acts] in this case would likely have a 'chilling effect' on the internet by opening the floodgates of litigation.") (dismissing negligent failure to warn claim); *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941, 2016 WL 4729302, at *17, *19 (N.D. Cal. Sept. 12, 2016) (dismissing both strict and negligent failure to warn claims because plaintiff failed to allege defendant's actual or constructive knowledge of the danger); *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 1002, 810 P.2d 549 (1991) ("Negligence law in a failure-to-warn case requires a plaintiff to prove that [the defendant] did not warn of a *particular risk* for reasons which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about." (emphasis added)).

Plaintiff also argues X Corp. breached a duty of care because "offering [a] social media [platform] under a paid subscription model significantly deviates from Industry Standard." Opp'n at 5. Even if Plaintiff's baseless allegation that he paid to join Twitter is credited as true (and it should not be for the reasons discussed *supra*), he cannot plausibly allege X Corp. "deviated from industry standard in terms of warning of the risks of" hackers on Twitter, the applicable standard of care for a negligent failure to warn claim. *Balistreri v. McCormick & Co., Inc.*, No. 22-CV-00349, 2023 WL 5988600, at *15 (N.D. Cal. Sept. 13, 2023) (dismissing negligent failure to warn claim). Thus, Plaintiff fails to plausibly allege X Corp. breached a duty of care by not warning him

7

about a risk of computer hacking.

Plaintiff further argues he sufficiently alleges proximate causation because the display of Plaintiff's Tweets "resulted in . . . dangerous people targeting Plaintiff and his family at their home." Opp'n at 6. But as discussed in Section II.C.1, *supra*, the FAC links Plaintiff's use of Twitter to his allegeds harm only via a long chain of tenuously connected events that do not involve X Corp., which cannot plausibly allege proximate causation. *See* Mot. at 12-13.

Finally, Plaintiff again concedes he cannot recover economic damages for this claim. *See* Opp'n at 6 ("Depending on this Court[']s choice of law [determination], the economic losses can be removed from the claim in an amended complaint.").

Accordingly, the Court should dismiss Plaintiff's negligent failure to warn claim under California law.

        3.    *Plaintiff Fails to Plausibly Allege a Negligence Claim Under California Law*

Rather than clarify whether he is asserting his second claim for negligence against X Corp., Plaintiff states he "is suing Elon Musk for negligence in his official capacity at" X Corp. Opp'n at 6. Regardless, Plaintiff does not refute X Corp.'s argument that the FAC fails to allege a plausible claim for negligence against X Corp. based on Mr. Musk's purported sub-Tweeting. *See* Mot. at 16-18. To the extent this claim is asserted against X Corp., the claim should be dismissed for the reasons set forth in Sections C.1. and C.2. above—*i.e.*, Plaintiff fails to plausibly allege a legally cognizable duty and proximate causation sufficient to state a claim.

        4.    *Plaintiff Fails to Plausibly Allege Any Claim Under North Carolina Law*

Plaintiff does not refute X Corp.'s arguments that he fails to plausibly allege any claim under North Carolina law. *See* Mot. at 18-21. Instead, he "incorporates" his California law arguments and states he "awaits this Court's decision as to which State[']s law to apply." Opp'n

at 6. Because X Corp.'s North Carolina law arguments are uncontested, and because Plaintiff fails to state a plausible claim under California law, this Court should dismiss Plaintiff's claims regardless of which State's law applies.

### D. Leave to Amend Should Be Denied

This Court should deny Plaintiff leave to amend because any amendment would be plainly futile. His claims are completely barred by the disclaimer and limitation of liability clause in the Terms. Moreover, contrary to his assertions otherwise, Plaintiff does not identify *any new facts* that could remotely cure the FAC's many pleading defects. And, at bottom, his claims are premised on inherently implausible allegations that find no support in law or fact.

Because amendment would be futile, this Court should not grant Plaintiff leave to amend.[3] *See Whitaker v. Nash-Rocky Mount Bd. of Educ.*, No. 14-CV-41, 2014 WL 2505521, at *3 (E.D.N.C. June 3, 2014) (denying leave to amend pro se complaint because amendment would be futile), *aff'd*, 585 F. App'x 60 (4th Cir. 2014); *Moseley v. Countrywide Home Loans, Inc.,* No. 09-CV-210, 2010 WL 4481782, at *6 (E.D.N.C. Sept. 30, 2010) (same), *report & recomm. adopted*, 2010 WL 4484566 (E.D.N.C. Oct. 26, 2010).

## III. CONCLUSION

For these reasons, as well as those stated in X Corp.'s Opening Brief, this Court should dismiss the FAC with prejudice.

---

[3] Leave to amend also should be denied because Plaintiff did not file the required motion to amend the FAC. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 217-18 (4th Cir. 2022) ("[A] district court does not abuse its discretion by denying contingent requests to amend in the legal memoranda made in lieu of a motion to amend.").

9

Respectfully submitted,

This 19th day of March, 2024   /s/ *Caroline M. Gieser*
Caroline M. Gieser
N.C. State Bar No. 51610
SHOOK, HARDY & BACON
1230 Peachtree St., Suite 1200
Atlanta, GA 30309
Phone: 470-867-6013
Facsimile: 407-867-6001
cgieser@shb.com
*Attorneys for Defendant X Corp.*

## CERTIFICATE OF WORD COUNT

As required by Local Civil Rule 7.2(f)(3), I certify that the document contains 2775 words, excluding the parts of the document that are exempted by Local Civil Rule 7.2(f)(1).

Executed on March 19, 2024.

/s/ *Caroline M. Gieser*
Caroline M. Gieser

**CERTIFICATE OF SERVICE**

I HEREBY certify that on the 19th day of March, 2024, a true and correct copy of the foregoing document was sent by first class mail, postage pre-paid to:

Anthony Russell Tatum, *pro se*
133-1F Leeward Lane
Hampstead, NC 28443


/s/ *Caroline M. Gieser*
Caroline M. Gieser